UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO: 3:18-CV-00665-MOC-DCK

| | |
|---|---|
| BARBARA THAXTON and ANGELA MAYES, Individually, and on the behalf of all similarly Situated current and former employees,<br><br>Plaintiffs,<br><br>vs.<br><br>BOJANGLES' RESTAURANTS, INC. and BOJANGLES', INC.,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on the litigants' Joint Motion for Settlement Approval of this Fair Labor Standards Act ("FLSA") Collective Action (Doc. No. 178). For the following reasons, the Court grants the litigants' motion, approves the proposed settlement agreement (Doc. No. 178-1), and awards Plaintiffs' counsel the reasonable attorneys' fees and costs requested.

**I. BACKGROUND**

On September 26, 2017, the named plaintiffs filed a putative opt-in collective action under the FLSA in the Eastern District of Tennessee against Defendants, asserting that they and similarly situated Assistant Unit Directors were misclassified as exempt under the FLSA. The district court in Tennessee conditionally certified a collective action in October 31, 2018, which was comprised of current and former employees who were misclassified as exempt Assistant Unit Directors at Defendants' restaurants in the United States during the preceding three years. (Doc. No. 69). The collective action was then transferred to this district on December 13, 2018. (Doc. No. 98).

Since this action commenced, the litigants have conducted extensive discovery, including the completion of nearly 400 opt-in plaintiff questionnaires, Defendants' responses to more than

300 sets of interrogatories, production of more than 35,000 pages of documents, and 35 witness depositions. (Doc. No. 178 at 2). After the litigants "vigorously pursued their positions and the rights of their clients through extended legal and factual analysis, discovery, and informal exchanges of information," they reached a proposed settlement through a full-day mediation before Mediator Carl Horn, III. (Id.). The terms of the proposed settlement are before the Court.

Under the proposed settlement agreement, Defendants will pay $375,000 to Plaintiffs to resolve the claims of the named plaintiffs, opt-in plaintiffs, settlement opt-in plaintiffs, and for the release of those claims. (178-1 at 6). Of that amount, $120,000 is allocated to pay Plaintiffs' attorneys' fees and $65,000 is designated to pay costs. (Id. at 7). The remaining $190,000 will be allocated among eligible plaintiffs, i.e., those employees who opted into this collective action. (Id. at 4–5, 11). See 29 U.S.C. § 216(b) (providing "[n]o employee shall be a party plaintiff to any [FLSA] action unless he gives his consent in writing to become such a party").

If the Court approves the settlement, Plaintiffs' counsel will send a notice to all eligible plaintiffs that provides a description of the settlement and the minimum amount that the eligible plaintiff could recover. (Doc. No. 178-1 at 11). If an eligible plaintiff rejects the settlement in writing, their claims will be dismissed without prejudice by the Court, and Defendants will retain those funds initially allocated to the rejecters. (Id. at 12–13). If they fail to respond, they will be deemed to have failed to prosecute, their claims will be dismissed with prejudice, and the amount will be allocated among the remaining opt-in plaintiffs. (Id.). The total recovery will be distributed among acceding eligible plaintiffs, based on their dates of employment, "regular rate" of pay, hours worked during the period, and their role in the action. (Id. at 7).

## II. DISCUSSION

The FLSA was enacted to protect workers from the substandard wages and grueling hours.

See Quevedo v. HBJ, Inc., 14-cv-734, 2014 WL 3970173, at *2 (D. Md. Aug. 13, 2014). To that end, the FLSA protections are generally not waivable by contract or otherwise. See Lynn's Food Stores v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982). If such provisions could be waived, this would "'nullify the purposes' of the statute and thwart the legislative policies [the FLSA] was designed to effectuate." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981).

Court-approved settlements are an exception to the general rule of non-waiver because they are "more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." Lynn's Food Stores, 679 F.2d at 1354. Before approval, the Court must find the settlement is a fair and reasonable resolution of a bona fide dispute between the parties. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 703 (1945). Before making this finding, the Court must ensure: (1) FLSA issues are actually in dispute; (2) the proposed settlement to those issues is fair and reasonable in light of relevant factors from Rule 23; and (3) the proposed attorneys' fees are reasonable, if included in the agreement. See, e.g., Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (collecting cases).

Reviewing the record, the Court first finds that FLSA issues are actually in dispute. In particular, Defendants argue that Plaintiffs were subject to the FLSA's executive exemption and thus not entitled to overtime pay. As the litigants recognize, such claims are necessarily fact-intensive. (Doc. No. 182). The difficulties of litigating such claims are compounded because this case involves more than 2,000 putative collective action members across several states. (Id.). In fact, Defendants maintain that this case is not suitable for a collective action because "Plaintiffs cannot establish that they are similarly situated with one another." (Doc. No. 28 at 6).

Second, when deciding whether the proposed settlement is fair and reasonable, courts consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including

3

the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of Plaintiffs' counsel; (5) the opinions of counsel; and (6) the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.  See Duprey, 30 F. Supp. 3d at 409 (collecting cases).  In their joint motion for settlement approval, the litigants extensively discuss each of these factors.  (Doc. No. 179 at 6–10).  Finding their discussion persuasive, the Court adopts it for this motion.  Thus, considering the extensive amount of discovery conducted, the absence of fraud, the experience of Plaintiffs' counsel and their expert opinions, and the likelihood of success in this case, the Court finds that the proposed settlement is fair and reasonable.

Finally, where a settlement is reached, the FLSA provides that the Court shall "allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).  To properly calculate the fee, the Court must complete a three-step process.  First, it must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate."  Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009).  "To ascertain what is reasonable in terms of hours expended and the rate charged, the Court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)."  McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014).  Next, the Court must "subtract fees for hours spend on unsuccessful claims unrelated to successful ones."  Robinson, 560 F.3d at 244.  The Court then awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."  Id.

At the Court's request, Plaintiffs' counsel supplemented its attorneys' fees request with additional information, including affidavits.  (Doc. Nos. 182–86).  Through the supplement, counsel carefully detailed the number of hours expended and their rates charged, while also

4

explaining the reasonableness of those rates. In total, counsel necessarily billed 1,507.22 hours of legal work. (Doc. No. 182 at 6). Counsel also provided pertinent case citations and affidavits to demonstrate their hourly rates were calculated in accordance with the prevailing market rate. See Rum Creek Coal Sales, Inc. v. Capertone, 31 F.3d 169, 179 (4th Cir. 1994). Finally, counsel correctly applied the Johnson factors to show their rates and hours expended were reasonable. (Doc. No. 182 at 12–13). Multiplying the number of reasonable hours expended by the reasonable rate, the Court arrives as a Lodestar of $472,176.40 in fees—an amount significantly greater than the requested $120,000. (Doc. No. 186 at 6). As Plaintiffs' counsel recognizes, they were not unsuccessful on any claims, so no additional adjustment is needed based on the unsuccessful claims. (Doc. No. 182 at 12). Reviewing the supplement and affidavits, the Courts finds that the articulated rates and hours are reasonable in this case. Likewise, the reimbursable litigation costs are reasonable. Accordingly, the Court in its discretion will award Plaintiffs' counsel $120,000 in attorneys' fees and $65,000 in costs.

In sum, the Court finds that the proposed settlement agreement embodies a fair and reasonable resolution to a bona fide dispute under the FLSA. The Court also finds that the requested attorneys' fees and cost are reasonable in light of the agreement reached. Therefore, the Court will grant the litigants' motion and approve the proposed settlement agreement.

## ORDER

**IT IS, THEREFORE, ORDERED**, that the litigants' Joint Motion for Settlement Approval of this FLSA Collective Action (Doc. No. 178) is **GRANTED**, and the proposed settlement agreement (Doc. No. 178-1)—including the gross settlement amount, releases of claims, and the payment of attorneys' fees and costs as set forth therein—is **APPROVED**.

**IT IS FURTHER ORDERED** that the gross settlement amount shall be distributed in

accordance with the terms set forth in the proposed settlement agreement. The Court retains jurisdiction to interpret, implement, and enforce the terms of the Settlement Agreement and all orders and judgments entered in connection therewith.

Signed: March 4, 2020

Max O. Cogburn Jr.
United States District Judge